
Proskauer Rose LLP    Eleven Times Square    New York, NY 10036-8299

April 21, 2020

Neil H. Abramson
Member of the Firm
d +1.212.969.3001
f 212.969.2900
nabramson@proskauer.com
www.proskauer.com

**By ECF**
Hon. Jesse M. Furman
United States District Court Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *NYSNA v. Montefiore Medical Center*, 1:20-CV-03122 (JMF)

Dear Judge Furman:

We represent Defendant Montefiore Medical Center ("Montefiore" or "the Hospital") and submit this letter in response to the Court's April 20th order. As set forth in summary below, the request for injunctive relief should be denied and the Complaint dismissed for lack of subject matter jurisdiction. We are prepared to file a motion to dismiss together with a full brief on the merits as well as sworn affidavits confirming all of the factual assertions in this letter by 5:00 p.m. on April 23, with argument to follow at the Court's convenience.

**Brief Factual Background**

NYSNA seeks sweeping injunctive relief against a world-renowned hospital fighting to provide care at the epicenter of the largest health care crisis in a century. On March 23, the Governor ordered Montefiore and other New York hospitals to double the number of beds. Contemporaneous with that additional patient load, the number of available nurses declined significantly due to illness, quarantine and leave. Critical medical and protective supplies also suffered from profound national shortages. Nothing in this response should be construed as taking anything away from the heroic daily efforts of thousands of nurses and other hospital staff. At the same time, it should not be ignored that Montefiore has been fighting to protect patients while it has dealt with these unprecedented challenges. Throughout the crisis, Montefiore has continued to comply in full measure with every regulation and recommendation concerning health care practitioners (including plaintiffs) promulgated by the governmental experts at the Center for Disease Control ("CDC"), New York State Department of Health ("NYSDOH"), and the New York City Department of Health and Mental Hygiene ("NYCDOH"). Indeed, there is not a single fact in all of NYSNA's moving papers alleging non-compliance with any of these governmental standards—only that the standards should be higher.

Despite Montefiore's rigorous compliance with evolving guidance from those governing bodies, on April 14, the Union filed a grievance alleging a violation of the parties' collective bargaining agreement ("CBA") along with a 27-paragraph information request. The grievance alleged that Montefiore violated the health and safety provision of the Parties' CBA by failing to provide

**Proskauer»**

Hon. Jesse M. Furman
April 21, 2020
Page 2

personal protective equipment ("PPE") and other equipment, violating staffing requirements "without adequate justification," and various other nurse workforce management issues. Without further discussion on the grievance, on the very next day, the Union told members of the media (but not Montefiore) that it would be filing separate court actions against Montefiore, Westchester Medical Center, and New York State on April 20. Papers were not served on Montefiore, however, until the morning of April 20.

Although NYSNA's papers make a number of broad statements and generalizations about alleged shortcomings by Montefiore and other health care providers during the crisis, those papers are short on specific current details that would warrant the extraordinary relief requested. Indeed, it is now clear that NYSNA in this proceeding seeks judicial relief not to <u>preserve</u> the status quo pending arbitration, as alleged, but rather to impose new and additional obligations on Montefiore that go well beyond the governments' recommendations and have no basis in the CBA. Even more concerning, requiring compliance with NYSNA's new broad and non-specific standards such as "as needed," "on demand," "all steps necessary", and "improved" upon the risk of civil contempt would paralyze Montefiore's ability to provide critical care to COVID-19 patients.

## The Nature of the Action And Legal Argument

The Union seeks an injunction based on an extremely narrow exception to the Norris LaGuardia Act, 29 U.S.C. Sec. 101-15 ("NLA"), which expressly deprives the Court of jurisdiction to issue injunctions in connection with labor disputes. The Union concedes that this is a 'labor dispute" within the meaning of the NLA and its purposefully broad anti-injunction provisions. The Union argues that they nevertheless are entitled to an injunction pending an arbitration of their grievance in order to preserve the "status quo".[1] The Union has not remotely satisfied the purposefully high standard to obtain such an injunction under *Niagara Hooker Employees Union v. Occidental Chem. Corp.*, 935 F.2d 1370 (2d Cir. 1991) ("*Niagara Hooker*"). The Complaint should be dismissed and the request for an injunction denied for the following reasons:

<u>First</u>, as is clear on the face of the complaint, the Union does not seek to preserve the status quo in aid of arbitration, but rather asks this Court both to *alter* the status quo and award the ultimate relief the Union requests in the grievance. The Union requests the Court to order Montefiore to affirmatively "take all steps necessary" to effectuate the relief requested in its grievance, including providing employees with additional PPE and other changes to the status quo <u>in excess of</u> what the CDC and the NYSDOH are currently requiring. Although Montefiore is following all rules and regulations promulgated by governmental experts, the Union seeks to impose change

---

[1] We note that, because NLA clearly applies, even if the Union's exception applies, Section 107 of the NLA prohibits injunctive relief unless there is sworn testimony, both in support of and in opposition to the application for injunctive relief, in open court that is subject to cross-examination. 29 U.S.C. § 107; *Truck Drivers Local Union No. 807, Int'l Bhd. of Teamsters v. Bohack Corp.*, 541 F.2d 312, 317 n.8 (2d Cir. 1976).

**Proskauer»**

Hon. Jesse M. Furman
April 21, 2020
Page 3

through arbitration and asks this Court for its imprimatur that the guidance of federal, state and local public health agencies is insufficient. It cannot be overstated that this COVID-19 crisis is so unique in the annals of modern history that there is no precedent – no status quo—to preserve through injunction. Thus, if the Court were to award the relief requested, this "would not be in 'aid' of the arbitration, but essentially would be in lieu of it"; the movant "does not merely ask the court to extend its 'holding pattern' but to recreate one." *Local 217 Hotel & Rest. Employees Union v. MHM, Inc.*, 805 F. Supp. 93, 109 (D. Conn. 1991), *aff'd*, 976 F.2d 805 (2d Cir. 1992); *See also Local 88502 of Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers AFL-CIO-CWA v. Morgan Advanced Materials & Tech., Inc.*, No. CV 19-215, 2019 WL 3769201, at *4 (W.D. Pa. Aug. 9, 2019); *Bakery Drivers & Salesmen Local 194, IBT v. Harrison Baking Grp.*, 869 F. Supp. 1168, 1179 (D.N.J. 1994). This type of injunction is not permitted under the *Niagara Hooker* exception to the NLA.[2]

Second, the Union has not complied with Section 108 of the NLA, which provides that "[n]o restraining order or injunctive relief shall be granted to any complainant who has failed to make **every reasonable effort** to settle such dispute either by negotiation or with the aid of . . . mediation or voluntary arbitration." 29 U.S.C. § 108 (emphasis added). With respect to the Union's claim of staffing abuses, the Parties' collective bargaining agreement requires the Union to commence a distinct expedited dispute resolution procedure (not the regular grievance process.) (Dkt. 7-2 at § 6.12.) The Union has not even commenced this exclusive contractually-required procedure. Likewise, with respect to other allegations in the grievance, although the alleged violative conditions purportedly existed from the start of the COVID-19 crisis in March, the Union did not commence a grievance until April 14, 2020. The Union proceeded with this action just six days later. While the Union now claims that they need this extraordinary judicial relief to aid contractual dispute resolution, its conduct belies that claim and seeks to substitute emergency judicial relief for the contractual dispute resolution process.

Third, and in any event, the Union cannot establish that it is likely to succeed on the merits of the grievance under the heightened standard applicable to mandatory injunctions. Specifically, the Union cannot point to any specific contractual provision that was allegedly breached even ignoring the exigent circumstances that Montefiore has been forced to operate under. Moreover, there is absolutely no basis to assume that an arbitrator—in the midst of a pandemic– would require Montefiore to adhere to more rigorous requirements regarding health and safety than what the federal, state, and local health agencies have recommended particularly because the applicable contractual provision imposes the duty to "observe all applicable health and safety regulations." To the contrary, it is well-established that the CDC recommendations Montefiore has followed are entitled to extreme deference during this national health crisis. See *Smith v. Potter*, 187 F. Supp. 2d 93, 97 (S.D.N.Y. 2001), *aff'd*, 343 F.3d 619 (2d. Cir. 2003).

---

[2] The only aspect of the Union's grievance that even arguably seeks to preserve the status quo pertains to the issue of contractual staffing. For the reasons set for the below, the Union is not entitled to an injunction on that issue either.

**Proskauer»**

Hon. Jesse M. Furman
April 21, 2020
Page 4

The Union's papers are replete with generalities that are often not specific to Montefiore or do not even refer to current activities that could justify injunctive relief. Instead, it is clear that the crux of the Complaint is that the leaders of the Union claim they have not been given sufficient attention in decision making. The Complaint admits "NYSNA brings this lawsuit because Montefiore has rejected the Union's repeated efforts to work with the Hospital…." (Compl. at ¶ 25.) Although that statement is untrue, it also is not a sufficient predicate for a contract violation. When NYSNA's specific requests for relief in the complaint are parsed individually, the lack of merit becomes even more glaring.

*PPE allegations*: Montefiore has been providing all properly fitted PPE (masks, gowns, protective-wear and face shields) in a manner that meets or exceeds the standards required by the CDC. The Union does not even contend otherwise. In fact, they do not even mention the CDC standards in their papers. Ironically, Montefiore is following the precise policy of distribution of N95 masks (one per shift unless soiled or damaged) that NYSNA has lauded as appropriate in another context. https://www.nysna.org/blog/2020/04/18/nysna-covid-19-update-april-18#.Xp5EpMhJE2w. NYSNA has now sued the NYSDOH to require it to enforce that very same rule challenged here (which we can provide to the Court). The papers do not identify any instance where additional equipment such as PAPR suits was required and denied.

*Donning and doffing of equipment allegations*. <u>This is not even part of the Union's grievance</u> and accordingly cannot be used as a justification for an injunction in aid of arbitration. In any event, the space provided has been the existing status quo for decades and meets all existing requirements for infection protection.

*Staffing*. As noted, NYSNA did not even commence the exclusive dispute resolution process applicable to these disputes, so there is no arbitral jurisdiction to preserve at this time. (Dkt. 7-2 at § 6.12.) Moreover, the contract specifically accords the Hospital flexibility to deal with health crises such as COVID-19, where nursing demand has far exceeded available personnel, to ensure positive patient outcomes. (Dkt. 7-1 at § 3.07.)

*Negative pressure rooms*. Such rooms are currently in use for procedures that could result in aerosolization of COVID-19. When it is not possible to use those rooms, portable HEPA filters are used, which is all consistent with the highest protocols of care.

*Operating unfamiliar equipment or without training*. Again, the affidavits are completely devoid of specifics on this claim. Nursing staff are receiving specialized training relevant to their duties as it relates to COVID-19 and management staff has been constantly available to assist.

*Enforcing the visitor policy*. Again, no examples are provided. The visitor restriction policy has been in place since March 18.

*Adequate testing on demand and antibody testing*. As the Court might be aware, there was an acute shortage of tests available, requiring prioritization for symptomatic staff. Montefiore has

**Proskauer»**

Hon. Jesse M. Furman
April 21, 2020
Page 5

worked to resolve the issue so that tests currently are available for symptomatic and asymptomatic staff. Antibody testing has not been available because it has not heretofore existed. With the new availability of tests, antibody testing of staff is commencing this week.

*The use of sick bank time.* Montefiore is currently not charging anyone's sick bank for COVID-related leave time and anyone who had their bank charged before is being made whole—certainly not grounds for injunctive relief.

*Reasonably accommodating nurses and providing leave.* NYSNA's papers provide no specific examples because reasonable accommodations and leave have been granted consistent with legal requirements.

But even if the Union was able to demonstrate non-compliance with the terms of the contract in specific examples (which it cannot), grievance arbitrators recognize that exigent and unprecedented circumstances, such as those associated with the current national health crisis, justifies interim non-compliance with even express contractual provisions. Elkouri & Elkouri, *How Arbitration Works*, § 13.13 E (Management Rights, Emergencies).

*Fourth*, the balance of equities weighs decidedly in Montefiore's favor because imposing the vague and unmanageable restrictions that the Union seeks will impede Montefiore's ability to provide critical patient care in the epicenter of an unprecedented pandemic. The Union's attempt to characterize the Hospital's interest as one of "cost" is as offensive as it is nonsensical. Montefiore has been required to make thousands of patient care decisions every hour—including how best to staff its limited resources. These decisions require deep knowledge of Montefiore's patient population as well as its healthcare providers. Montefiore's response to the current staffing shortage has allowed it to meet the demands presented by COVID-19 and provide care for patients while also protecting the safety of its staff. Without that expert flexibility, Montefiore would be paralyzed and unable to either provide care for patients or protect its staff. There is no basis for the Union to disrupt that delicate balance based the evidence submitted. To put this in the starkest of terms, if Montefiore's health experts are not permitted to make these critical decisions based on their own and governmental expertise, patient outcomes will suffer.

**Conclusion**

For the foregoing reasons, the Court should deny the Union's request for and dismiss the Complaint. Montefiore respectfully requests the opportunity to fully brief these issues and submit supporting affidavits by 5:00 p.m. on April 23.

Dated: April 21, 2020                                                    Respectfully submitted,

                                                                          */s/ Neil H. Abramson*

cc: All Counsel of Record