```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
THE NEW YORK STATE NURSES ASSOCIATION,                             :
                                                                   :
                               Plaintiff,                          :
                                                                   :         20-CV-3122 (JMF)
                -v-                                                :
                                                                   :         MEMORANDUM OPINION
MONTEFIORE MEDICAL CENTER,                                         :              AND ORDER
                                                                   :
                                                                   :
                               Defendant.                          :
                                                                   :
-------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

On April 20, 2020, the New York State Nurses Association ("NYSNA"), a nurses' union, filed this lawsuit and an emergency motion seeking an injunction requiring Montefiore Medical Center ("Montefiore"), a private hospital, to take certain steps to mitigate the risk that Montefiore nurses would contract COVID-19. Among other things, NYSNA asks the Court to compel Montefiore to increase the availability of personal protective equipment ("PPE"), such as protective respirators and gowns; to provide "a proper space to don and doff such items so that disease-free areas in the hospital do not become contaminated"; to make coronavirus testing available on demand; and to take other steps "to preserve employees' physical and emotional health, including respecting their requests for statutorily-protected leave or accommodations." ECF No. 6 ("Pl.'s Br."), at 5; *see also* ECF No. 1 ("Compl."). The premise of NYSNA's suit is that Montefiore is not doing enough to protect nurses from the disease. Montefiore emphatically disputes that premise, insisting that it is doing everything that Government agencies have recommended — and more — and that granting relief to NYSNA would not only fail to improve

safety for the hospital's nurses, but would also paralyze the hospital's ability to provide patient care in the unprecedented and extraordinarily challenging circumstances presented by the COVID-19 pandemic.  Needless to say, the Court is deeply sympathetic to both sides: Nurses are among the heroes of this moment, putting their own lives at risk each and every day in an effort to save the lives of others; and the challenges facing hospitals — extraordinary demand and dwindling resources, with lives hanging in the balance — are undoubtedly staggering.[1]

The Court is not ultimately tasked with resolving the parties' dispute — under the terms of the parties' collective bargaining agreement ("CBA"), the dispute is subject to arbitration, and NYSNA has initiated the arbitration process.  Instead, the Court is asked only to enter an injunction pending that arbitration.  But there is a significant threshold obstacle to granting even that limited form of relief: The Norris-LaGuardia Act ("NLGA"), 29 U.S.C. § 101 *et seq.* "deprives federal courts of the jurisdiction to grant injunctive relief in labor disputes, except in limited circumstances." *Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1375 (2d Cir. 1991) ("*Niagara Hooker*") (citing 29 U.S.C. § 101).  NYSNA contends that the injunction it seeks falls within a limited exception to the NLGA that traces back to *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 254 (1970).  *See* Pl.'s Br. 15-19.  Specifically, it contends that it is entitled to a "reverse *Boys Markets*" injunction, *id*. at 16 — "a *status quo* injunction against an employer when the employer's action has the effect of frustrating the arbitral process, or rendering it a hollow formality." *Niagara Hooker*, 935 F.2d at

---

[1]      Given the equities on both sides and the fact that the parties are better equipped to address the complex issues involved in balancing nurse safety and patient care in these challenging times than the Court is, the ideal resolution here plainly would have been an amicable one.  To that end, the Court ordered the parties to engage in mediation under the supervision of Marlene Gold, *see* ECF No. 21, and delayed issuing this ruling to allow the mediation to run its course.  Unfortunately, despite Ms. Gold's best efforts — for which the Court extends its thanks — the parties were unable to reach an agreement, and the Court has no choice but to proceed.

1377 (internal quotation marks omitted).  Montefiore disagrees, and thus cross-moves to dismiss for lack of subject-matter jurisdiction, arguing that NYSNA does not seek "to *preserve* the status quo in aid of arbitration," but "to impose new and additional obligations on Montefiore that would profoundly *alter* the status quo and grant [NYSNA] the ultimate relief it requests in the grievance."  ECF No. 27 ("Def.'s Br."), at 2.  Montefiore has the better of the argument.

The leading case in this Circuit on "reverse *Boys Markets*" injunctions is the Second Circuit's decision in *Niagara Hooker*, in which a union sued to enjoin a company from implementing random drug testing of all "safety-sensitive" employees pending arbitration.  935 F.2d at 1373 (internal quotation marks omitted).  The district court granted an injunction on the ground that, without it, the arbitral process would be frustrated because the rights of those subjected to unlawful drug testing in the interim "could not be redressed by an arbitration decision favorable to the union."  *Id.* (internal quotation marks omitted).  The Second Circuit reversed.  In applying the "narrow" *Boys Markets* exception to the NLGA's prohibition on injunctive relief to a union's request, the Court reasoned, a court must "focus directly on preserving the arbitral process, rather than on the promise of the employer, be it express or implied."  *Id.* at 1376-77.  "The underlying dispute must be subject to mandatory arbitration under the labor contract," the Court held, "and the injunction must be necessary to prevent arbitration from being rendered a meaningless ritual."  *Id.* (internal quotation marks omitted).  The Court then continued:

> The arbitration process is rendered meaningless only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction. . . .  The arbitral process is not rendered meaningless . . . by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable. . . .  Rather, for an injunction to issue at the union's behest, the irremediable injury in question must be such as to threaten the integrity of the arbitration process itself.

3

*Id.* at 1378 (internal quotation marks, paragraph structure, and citations omitted). "[T]he 'frustration of arbitration' standard," the Court explained, "preserves the effectiveness of the arbitral process which the parties have agreed upon. By requiring more than a minimal showing of injury for the issuance of an injunction, the standard also guards against undue judicial interference with the employer's ability to make business decisions." *Id.*

*Niagara Hooker* and subsequent cases make plain just how "narrow" the "reverse *Boys Markets*" exception is. In *Niagara Hooker*, for instance, the Court acknowledged that the company's implementation of the drug testing program pending arbitration would cause "interim damage" to some of those tested, but nevertheless concluded that it would "not frustrate the arbitral process or render it futile" and, thus, did not justify an injunction. *Id.* at 1379. Requests for "reverse *Boys Markets*" injunctions have been denied for similar reasons in cases where an employer sought to implement new contractual health care benefit terms, *see Local Union No. 884, United Rubber, Cork, Linoleum, & Plastic Workers of Am. v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347 (8th Cir. 1995); where the U.S. Postal Service sought to require letter carriers to spend less time in the office and more time on the street, *see Nat'l Ass'n of Letter Carriers v. U.S. Postal Serv.,* 419 F. Supp. 3d 127 (D.D.C. 2019); where an employer sought to implement a policy requiring all employees to receive influenza vaccination as a condition of employment, *see United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Essentia Health*, 280 F. Supp. 3d 1161, 1167 (D. Minn. 2017); where an employer sought to lay off workers, *see Commc'ns Workers of Am. v. Verizon New York Inc.*, No. 02-CV-4265 (RWS), 2002 WL 31496221, at *1 (S.D.N.Y. Nov. 8, 2002); and where an employer was alleged to have improperly terminated health insurance coverage after closing a hotel, *see Local 217 Hotel & Rest. Emps. Union v. MHM, Inc.*, 805 F. Supp. 93 (D. Conn. 1991). Notably,

NYSNA fails to cite a single decision within this Circuit postdating *Niagara Hooker* in which a "reverse *Boys Markets*" injunction was granted.[2]

In light of this case law, the Court is compelled to conclude that it lacks subject-matter jurisdiction to grant NYSNA the injunction it seeks. Put simply, as Montefiore argues, NYSNA does not seek to preserve the status quo. Instead, it "seeks to create a new status quo that gives the Union everything (and more) it requests in the grievance." ECF No. 32 ("Def.'s Reply"), at 5. Indeed, "Montefiore (not NYSNA) would need to pursue the arbitration to reverse the changes the Court had ordered." *Id*. Such relief would not be "would not be in 'aid' of arbitration but . . . would be in lieu of it." *MHM, Inc*., 805 F. Supp. at 109-10. Accordingly, granting it would turn the purpose of a reverse *Boys Markets* injunction — to protect the integrity of the arbitral process — on its head. *Niagara Hooker*, 935 F.2d at 1377. And it would "unduly interfere" with the hospital's "ability to make business decisions" at a time when the judicial interference could be particularly problematic. *Id.* at 1378. The tragic fact that, between now and the conclusion of the arbitration proceedings, nurses at Montefiore may well (indeed, are likely to) contract COVID-19 does not alter that conclusion. First, as the *Niagara Court* held, the arbitral process "is not rendered meaningless by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable." *Id.*

---

[2] The out-of-Circuit cases upon which NYSNA relies either involved the relocation or closure of an employment site or are hard to square with the analysis and holding of *Niagara Hooker*. *See* Pl.'s Brief 16 (citing *IBEW Local 2327 v. Consol. Commc'ns of N. New England Co., LLC*, No. 2:19-CV-265 (NT), 2019 WL 7546601 (D. Me. Aug. 23, 2019) (enjoining sale of a unit that employed union members pending arbitration); *Constellium Rolled Prods. Ravenswood, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, No. 2:18-CV-1404 (TEJ), 2018 WL 6329748 (S.D. W.Va. Dec. 4, 2018) (enjoining termination of health insurance coverage pending arbitration); *Int'l Union v. CONSOL Energy, Inc.*, 243 F. Supp. 3d 755 (S.D. W.Va. 2017) (same); *Int'l Brotherhood of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 239 F. Supp. 3d 906 (D. Md. 2017) (enjoining relocation of operations pending arbitration)).

(internal quotation marks and alterations omitted).  Second, on the existing record — that is, given the measures that Montefiore has been taking, under extraordinary circumstances, to protect its staff and provide patient care — the Court cannot say that the likelihood of infection (let alone death) in the absence of an injunction is so great as to render the arbitral process meaningless.  That is not to say that Montefiore cannot or should not do more to protect its nurses than it is; it is merely to say that, under the parties' collective bargaining agreement, that is an issue for the arbitrator, not this Court, to decide.

The strongest case that the Court found in support of NYSNA's argument — also out-of-Circuit and cited only passingly by NYSNA — is *United Steelworkers of America v. Blaw-Knox Foundry & Mill Machinery, Inc.*, 319 F. Supp. 636 (W.D. Pa. 1970), in which the court enjoined a metal foundry from reducing the number of workers staffed to operate an open-hearth furnace on the ground that it was likely that the workers would not be able to contain the molten steel seeping from the furnace.  On its face, however, *United Steelworkers of America* involved an employer's decision to unilaterally terminate a local agreement enforceable under the parties' CBA and introduce a new staffing schedule.  *Id*. at 639.  So the injunction there — unlike the one proposed here — *was* a bona fide status quo injunction.  On top of that, the decision predated *Niagara Hooker* by two decades and is hard to square with the Second Circuit's decision in various respects.  *Compare, e.g.*, *id.* at 640 ("[I]t was the intent of Congress in passing the Norris-LaGuardia Act to correct abuses which had resulted from the interjection of the federal judiciary into union-management disputes on the behalf of management.  Here the injunction is sought against management and the peril against which Congress sought to protect, the use of the injunction as a weapon to weaken labor unions, is not present."), *with Niagara Hooker*, 935 F.2d at 1375 ("The broad language of the NLGA proscribes injunctive relief in labor disputes,

6

whether on behalf of unions or employers."). Accordingly, *United Steelworkers of America*, even if binding on this Court, would not call for a different analysis or conclusion here.

In short, binding Second Circuit precedent compels the Court to grant Montefiore's motion to dismiss and to deny NYSNA's motion for emergency relief as moot. The Court does so with a plea to both sides to continue their efforts in good faith to reach an amicable resolution of their disputes. Both sides presumably share the ultimate goal of maximizing protections for healthcare workers on the front lines of the battle against a vicious disease without compromising patient care. And the parties are plainly in a better position than either the Court or an arbitrator to find the best ways to achieve that goal despite limited resources and ever-changing circumstances. Failing an amicable resolution, the Court hopes that the parties can and will expedite the arbitration proceedings. This Court may lack authority to address NYSNA's concerns, but to the extent these concerns are valid, it is critical that they be addressed as swiftly as possible. Lives may hang in the balance, and the NYSNA nurses deserve as much.

The Clerk of Court is directed to terminate ECF Nos. 5 and 22 and to close this case.

SO ORDERED.

Dated: May 1, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge